IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

JAMES SPEED                                                                                          PLAINTIFF

v.                                              NO. 3:14-cv-00214 JJV

CAROLYN W. COLVIN, Acting Commissioner                                               DEFENDANT
of the Social Security Administration

### MEMORANDUM OPINION AND ORDER

Plaintiff, James Speed ("Speed"), commenced the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, he challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ"). On April 30, 2015, the Court heard oral argument at the request of Plaintiff. Plaintiff was represented by Greg Wallace, Esq., and the Commissioner was represented by Special Assistant United States Attorney Stuart Lipke. Counsel are commended for their diligence in representing their respective clients in this matter. After considering the arguments of counsel made during a hearing, and having reviewed the record, the Court finds that a remand is necessary.

Speed maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole.[1] Speed so maintains primarily because the ALJ applied the

---

[1] The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

Medical-Vocational Guidelines ("Guidelines") at step five of the sequential evaluation process even though Speed suffers from significant mental impairments.

At step five, the ALJ must determine whether there are jobs in the national economy the claimant can perform. Speed maintains that the Guidelines cannot be used at step five if the claimant suffers from a severe mental impairment and offers Brock v. Astrue, 674 F.3d 1062 (8th Cir. 2012), in support of that proposition. The Commissioner does not disagree but construes Brock v. Astrue in the following manner: if a claimant suffers from a "severe mental impairment with accompanying nonexertional limitations," the ALJ must utilize vocational expert testimony at step five and may not rely upon the Guidelines. See Pleading 12 at 4.

During the administrative hearing, the ALJ obtained vocational expert testimony. See Transcript at 36-38. The vocational expert testified that Speed's past work included "assembly line production" and "car loader/material handler." The ALJ then asked the vocational expert two hypothetical questions, the first of which was as follows:

> … I want you to assume a hypothetical individual the same age, education, and vocational profile as [Speed]. Assume the individual has no exertional limitations. Mentally, the individual is restricted to unskilled work. He can perform work where interpersonal contact is incidental to the work performed; repetitious tasks learned and performed by rote that involves (INAUDIBLE); requires little independent judgment and the supervision required [is] simple and direct; and he cannot deal with the general public. Given those limitations, could that individual return to any of [Speed's] past work?

See Transcript at 37. The vocational expert testified that the hypothetical individual could perform work in "assembly line production." When asked if there was any other work the individual could perform, the vocational expert testified that the individual

could perform work as a laundry worker, egg breaker, and basket filler. The ALJ then asked the vocational expert a second hypothetical question, one in which she was asked to assume the same individual but with the following additional limitations:

> ... I want you to assume that the individual cannot be exposed to even mild amounts of respiratory irritants. ... [H]e cannot respond appropriately to supervision, coworkers, and the usual work situations; cannot deal with changes in a routine work setting; tolerate criticism or handle factory production rate pace work. And I'm going to add that he's prone to poor impulse control. Given those limitations, would there be any work for such an individual?

See Transcript at 38. The vocational expert testified that there was no work available.

The ALJ's written decision reflects that he found Speed's severe impairments include a generalized anxiety disorder and an oppositional defiant disorder. The ALJ assessed Speed's residual functional capacity and found that he is capable of performing a full range of work at all exertional levels but with the following limitations:

> ... [Speed] cannot have exposure to concentrated amounts of respiratory irritants such as dust, fumes, strong odors, or extreme changes in temperature or humidity. [He] can perform unskilled work. [He] can peform work [where] interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote, involves few variables, requires little independent judgment, and the supervision required is simple, direct, and concrete. [He] cannot deal with the general public.

See Transcript at 14. After determining that Speed cannot return to his past work, the ALJ proceeded to step five where he found the following:

> [Speed's] ability to perform work at all exertional levels has been compromised by non-exertional limitations. However, these limitations have little or no effect on the occupational base of unskilled work at all exertional levels. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines, as supported SSR 85-15. This Ruling indicates that [Speed's]

>   environmental limitation of no exposure to concentrated amounts of respiratory irritants would not significantly erode the available occupational base at all exertional levels, as "most job environments do not involve great ... amounts of dust, etc." Furthermore, mental limitations assessed to [him] would not prevent [him] from being able to perform the basic mental demands of competitive, remunerative, unskilled work.

See Transcript at 20.

The ALJ's use of the Guidelines at step five was error. The only question is whether his use of the Guidelines was harmless error, that is, whether it was, as the Commissioner maintains, a scrivener's error. The Commissioner would have the Court ignore the ALJ's written decision at step five, adopt the vocational expert's testimony, and find that there are jobs in the national economy a hypothetical individual with Speed's limitations can perform. The Court declines to do so for several reasons. First, the Court is not persuaded that the ALJ's written decision, specifically, the paragraph in which he relies upon the Guidelines, involves a scrivener's error. The typical scrivener's error involves a typographical error such as a misspelled word or otherwise involves a minor mistake or inadvertence. Here, the error is not minor but is far more significant. It involves the critical issue in the case, namely, whether there are jobs in the national economy a hypothetical individual with Speed's limitations can perform.

Second, the ALJ's hypothetical question was deficient because it did not contain all of the limitations he found in assessing Speed's residual functional capacity. Specifically, the question did not contain limitations for "exposure to concentrated amounts of respiratory irritants such as dust, fumes, strong odors, or extreme changes in temperature or humidity." The Commissioner would have the Court overlook the

omission of those limitations because the hypothetical individual can still perform work as a basket filler, work the Commissioner represents involves no exposure to respiratory irritants. It is not clear, though, whether work as a basket filler also involves "extreme changes in temperature or humidity."

Third, there is nothing to suggest that the ALJ adopted the vocational expert's testimony. After the vocational expert provided an answer to the ALJ's second hypothetical question, the ALJ asked Speed's attorney if he had any questions. When counsel stated he had no questions, the ALJ deemed the hearing complete. Moreover, the ALJ never indicated whether the vocational expert's testimony was consistent with the Dictionary of Occupational Titles.

Last, the Court is constrained by its review function, which is limited to determining whether the ALJ's decision is supported by substantial evidence on the record as a whole. Were the Court to ignore the ALJ's written decision at step five, adopt the vocational expert's testimony, and find that there are jobs in the national economy a hypothetical individual with Speed's limitations can perform, the Court would likely be abdicating that function.

In addition to the foregoing, two additional points are in order. First, the Commissioner maintains that were the case remanded, the result would likely be the same. The Court recognizes that possibility exists, but it cannot be said with absolute certainty that the same result will occur. Second, 20 C.F.R. 405.370 provides, in part, that the ALJ will "prepare a written decision that explains in clear and understandable language the specific reasons for the decision." The ALJ's written decision in this

instance fails to do so.

Given the foregoing, the ALJ's decision is reversed, and this case is remanded. Upon remand, the ALJ shall refrain from using the Guidelines at step five. The ALJ shall once again obtain vocational expert testimony on the question of whether there are jobs in the national economy a hypothetical individual with Speed's limitations can perform. The ALJ's written decision shall reflect his finding on that issue. The remand in this case is a "sentence four" remand as that phrase is defined in 42 U.S.C. 405(g) and Melkonyan v. Sullivan, 501 U.S. 89 (1991). Judgment will be entered for Speed.

IT IS SO ORDERED this 4th day of May, 2015.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE